IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **Travis Porter,** | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   1:20cv203 (RDA/IDD) |
| | ) |
| **I. Hamilton, et al.,** | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

Travis Porter ("Porter" or "Plaintiff"), a Virginia inmate proceeding pro se, filed a civil rights action under 42 U.S.C. § 1983, and in his second amended complaint he alleged that defendants — Israel Hamilton, Warden; Lt. Sawyer, Building Lieutenant; Penden, Counselor; Sgt. Stephenson, Night Shift Sergeant; Lt. Jackson, Watch Commander; Harris, Head of Medical; "Jane Doe," Nurse — violated his Eighth Amendment rights by not protecting him from an attack by another inmate and by delaying adequate medical care for the injury he sustained as a result of the attack while he was detained with the Virginia Department of Corrections ("VDOC") at the Sussex I State Prison (Sussex I). [Dkt. No. 20]. Defendants Hamilton and Jackson moved for summary judgment, Porter filed responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and the Court granted that motion for summary judgment on April 15, 2021. [Dkt. Nos. 39, 42].

Defendants Sawyer, Penden, and Stephenson filed a motion for summary judgment on June 11, 2021, supported by a brief and exhibits. [Dkt. Nos. 51, 52].[1] Porter has been afforded the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.

---

[1] Also pending are Defendant Harris's motion to dismiss [Dkt. No. 72] and Porter's motion for leave to amend stating he has identified the Jane Doe defendant named in his second amended complaint and seeking leave to file an amended complaint. Each of the pending motions will be addressed separately.

1975), and has done so. [Dkt. Nos. 63].[2] Accordingly, this matter is now ripe for disposition.[3] For the reasons that follow, the defendants' motion for summary judgment must be granted.

## II. Statement of Undisputed Facts

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendants, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, set forth a statement of material facts that defendants contend are undisputed. Plaintiff filed a declaration, but it does not comply with his obligations under those Rules. Instead, Plaintiff's declaration is conclusory and argues the defendants are not entitled to summary judgment without addressing the defendants' statements of undisputed and disputed facts with citations to the record.[4] Accordingly, the following statement of uncontested facts is derived from a review of defendants' statement of undisputed facts, the nonmovant's response, and the record.

1. Plaintiff is a VDOC inmate and was housed at Sussex I at the relevant time.

2. Defendant Penden is an institutional counselor at Sussex I, Defendant Sawyer is a

---

[2] In a December 7, 2021 filing, Porter alleged he had not received either the motion for summary judgment, the related brief, or the Roseboro notice. Porter, however, filed a "Declaration in Opposition to Defendants Motion for Summary Judgment" on August 19, 2021. [Dkt. No. 63]. In that declaration, Porter admitted he had received not only the motion for summary judgment but the "affidavits," as well, and summarizes the defendants' position on the merits of his claims. Porter also asks the Court to stay ruling on the motion for summary judgment to allow him to seek discovery. [Id. at 1, 2]. The Court directed the defendants to respond to Porter's discovery requests and other motions and subsequently denied Porter's several discovery motions by Order dated November 17, 2021 because they were not related to the exhaustion issue raised in the motion for summary judgment. [Dkt. No. 71]. The record establishes that Porter received the motion for summary judgment and the related pleadings, and he has been afforded the notice required by Roseboro.

[3] To the extent Porter seeks to amend his complaint by raising new matters in a response to a motion, he may not do so through a brief in response to a motion to dismiss. See Hurst v. District of Columbia, 681 F. App'x 186, 194 (4th Cir. 2017) ("a plaintiff may not amend her complaint via briefing") (citing Commonwealth of Pennsylvania v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)); Zachair, Ltd. v. Driggs, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (a plaintiff is "bound by the allegations contained in [his] complaint and cannot, through the use of motion briefs, amend the complaint."), aff'd, 141 F.3d 1162 (4th Cir. 1998). Any such claims raised in his opposition are not properly before the Court, and they will not be addressed here.

[4] The record in this case includes the defendants' affidavit and exhibits [Dkt. Nos 52-1]; Porter's sworn declaration . [Dkt. No. 63]; his April 5, 2021 sworn brief in opposition [Dkt. No. 38]; his affidavit filed on March 22, 2021 [Dkt. No. 36]; and his sworn response filed December 7, 2021. [Dkt. No. 75].

Lieutenant at Sussex I, and Defendant Stephenson is a former Sergeant at Sussex I. [Dkt. Nos. 26 at ¶¶ 2, 3; 49 at ¶ 2].

3. The operative complaint, alleges that on or about October 30, 2019, Porter's cellmate stabbed him in the face and that, prior to the stabbing, Porter had requested that he be moved to another cell because he was in fear of his safety. Porter also alleges that, during the alleged altercation, staff members witnessed the assault but did not intervene. [Dkt. No. 20 at 6-7].

4. VDOC Operating Procedure ("OP") 866.1, Offender Grievance Procedure, sets forth the administrative procedure for offenders to resolve complaints and appeal administrative decisions. The process provides corrections administrators a means to access potential problem areas and, if necessary, correct those problems in a timely manner. [Dkt. No. 52-1 at ¶ 4].

5. The grievance procedure unfolds in three basic steps. First, an offender should make a good faith effort to informally resolve his complaint. This may be accomplished by submitting an informal complaint form to the grievance department at the appropriate institution, who will then forward the informal complaint to the appropriate department head. [Id. at ¶ 6]. Second, if the offender is not satisfied with the outcome of the informal process, the offender should submit a regular grievance. [Id. at ¶ 7]. If accepted at intake, the regular grievance is then addressed at the VDOC facility level, resulting in a Level I decision. [Id. at ¶ 8]. Third, if the offender is not satisfied with the Level I response, he should appeal that decision to regional administrators within VDOC, who will provide a Level II decision. [Id. at ¶ 9]. For most issues, Level II represents the final level of appeal. [Id.].

6. Accordingly, for an offender to properly exhaust his administrative remedies, he must submit a regular grievance, which is accepted at intake, and then pursue that grievance all the way through Level II of the administrative review process. [Id. at ¶ 16].

7. Offenders have five days in which to appeal a Level I decision to Level II. If the offender does not timely submit this appeal, he has not "taken his complaint to the highest level of administrative review and, therefore, has not exhausted the administrative remedies available to him under VDOC's grievance process." [Id. at ¶ 16].

8. On November 7, 2019, Porter submitted an informal complaint, claiming that he had been stabbed in his face by his cellmate on October 30, 2019. In the informal complaint, Porter alleged that several staff members witnessed the alleged assault, and that he had told his counselor and other officers "of [his] safety concerns" prior to the assault, but no action had been taken. The response to that complaint stated that the inmate responsible had been moved to the restrictive housing unit. [Id. at ¶¶ 11-12 & Encl. B].

9. On November 26, 2019, Porter filed a regular grievance, contending that he had been stabbed in the face by his cell partner, and that, prior to the incident, he had told staff members that he had safety concerns and wanted to be moved. Although the grievance was initially rejected at intake, Porter appealed the intake decision and, on appeal, the regional administrator directed that the grievance be accepted. [Id. at ¶¶ 13-14].[5]

10. The Level I response to Porter's regular grievance determined that it was unfounded. [Id. at ¶ 15 & Encl. B]. The Level I investigation revealed that Porter had never submitted a request for a cell change prior to the October 30, 2019 incident. [Id. at 24].[6]

11. Porter did not properly appeal the decision to Level II for review. [Id. at ¶ 16].

12. Porter avers only that he submitted an informal complaint and a Level I grievance, and

---

[5] Porter's sworn filings do not dispute either the copy of the authenticity of the informal complaint submitted with the brief in support of the motion for summary judgment (dated "11-2-19," or received on "11/7/19;" or the copy of the grievance form, dated November 21, 2019, and stamped received on November 26, 2019.

[6] Porter has not disputed the accuracy of the Level I response dated January 8, 2020.

4

does not aver that he submitted a Level II appeal within the five-day time period provided for in VDOC policy. [Dkt. No. 20 at 5].[7]

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate, i.e., that no genuine issues of material fact are present for resolution. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The facts which a moving party bears the burden of proving are those which are material: materiality is dictated by "the substantive law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once a moving party has met its burden of proof, the non-moving party must produce specific facts to generate a disputed issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court will view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997). Nevertheless, "[o]nly disputes over facts which might affect the

---

[7] Porter submitted two affidavits in support of his opposition to the Defendants Hamilton and Jackson's motion to dismiss [Dkt. No. 34, 36], but each affidavit addressed, primarily, the merits of his claims that the defendants had failed to protect him and the adequacy of the medical care. Porter's affidavit did, however, aver that he submitted an informal complaint and a regular grievance [Dkt. No. 36 at 1], but did not aver that he had appealed the determination that his grievance was unfounded. In his unsworn amended complaint, however, he alleges he did appeal, but acknowledged that the appeal was denied because it was "received 14 days past the deadline." [Dkt. 20 at 5]. In a sworn pleading dated March 15, 2021, and filed on March 22, 2021 [Dkt. No. 36], Porter swore that he had "filed an informal complaint and a grievance" "on or around" November 1, 2019. [Id. at 1]. In another sworn pleading dated April 1, 2021, Porter swore that he had filed a grievance on November 22, 2019 after having "presented the facts relating to [his] complaint" on November 1, 2019. [Dkt. No. 38 at 11]. In his most recent filing, Porter admits that he filed an informal complaint and grievance. [Dkt. No. 75 at 1]. Porter also argues he exhausted his claims because he "followed the process." [Id.].

5

outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

The non-moving party may not defeat a properly supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). This applies even where the non-moving party is a pro se prisoner. Campbell-El v. Dist. of Columbia, 874 F. Supp. 403, 406-07 (D.C. 1994); see also Local Civil Rule 7(K)(3) (to defeat a dispositive motion, a pro se party "must identify all facts stated by the moving party with which the pro se party disagrees and must set forth the pro se party's version of the facts by offering affidavits ... or by filing sworn statements....").[8] Unsupported speculation is not enough to withstand a motion for summary judgment. See Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986). Similarly, "[t]he mere existence of some alleged factual dispute" cannot defeat a motion for summary judgment; the dispute must be both "material" and "genuine," meaning that it "might affect the outcome of the suit under the governing law." Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001) (emphasis omitted).

### III. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement is

---

[8] "Generally, an affidavit filed in opposition to a motion for summary judgment must present evidence in substantially the same form as if the affiant were testifying in court." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (citing Fed. R. Civ. P. 56(e)). Affidavits must "be made on personal knowledge, set out facts admissible in evidence, and show that the affiant is competent to testify on the matters stated." Harris v. Mayor & City Council of Baltimore, 429 F. App'x 195, 198 n.5 (4th Cir. 2011). Additionally, "summary judgment affidavits cannot be conclusory ... or based upon hearsay." Evans, 80 F.3d at 962.

mandatory," Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 677 (4th Cir. 2005) (citing Porter v. Nussle, 534 U.S. 516, 524 (2002)), and an "untimely or otherwise procedurally defective administrative grievance" does not satisfy the PLRA's exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 83-84 (2006). Exhaustion is required even if the administrative remedies do not meet federal standards, are not "plain, speedy, and effective," and even if the relief sought is not available via the grievance process, such as monetary damages. Porter, 534 U.S. at 524. To properly exhaust, thereby giving the agency a full and fair opportunity to adjudicate a plaintiff's claims, the plaintiff must adhere to the agency's deadlines and procedural rules. Woodford, 548 U.S. at 89–90.

The PLRA also requires that an inmate must exhaust his administrative remedies *before* bringing a suit to challenge prison conditions. Ross v. Blake, 136 S. Ct. 1850, 1854–55 (2016) (quoting 42 U.S.C. § 1997e(a)) (holding that the PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions.") (emphasis added); see Graham v. Gentry, 413 F. App'x 660, 662-663 (4th Cir. 2011) (the PLRA requires an inmate "to exhaust any 'available' administrative remedies before pursuing a § 1983 action in federal court"). The requirement that a prisoner exhaust before filing "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reduc[es] litigation to the extent complaints are satisfactorily resolved, and improv[es] litigation that does occur by leading to the preparation of a useful record." Porter, 534 U.S. at 519.[9]

---

[9] Ross held that courts "may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement" and that "[t]he only limit to §1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. at 1862. Although Plaintiff does not rely on the exceptions in Ross, the Court finds that the three exceptions in Ross do not apply. Id. at 1859-60. First, the grievance process was available to Porter. Second, the grievance procedure is straightforward. Lastly, there is no evidence that the VDOC personnel prevented Porter from using the grievance procedure or from filing an appeal. See Gibson v. Weber, 431 F.3d 339, 341 (8th Cir. 2005) ("Appellants have presented no evidence that any prison official thwarted an attempt to initiate the procedures or that any official made it impossible for them to file grievances.").

7

The defendants acknowledge that Porter filed an informal complaint and a regular grievance, but aver that he did not file an appeal to Level II. [Dkt. No. 52-1 at 5]. See Adams v. Sw. Va. Reg'l Jail, C.A. No. 7:12cv462, 2014 U.S. Dist. LEXIS 106195, *10 (W.D. Va. Aug. 4, 2014) (an inmate does not exhaust the grievance process if he fails to file an appeal in accordance with jail policy and procedure), aff'd sub nom. Adams v. Ofought, 592 F. App'x 225 (4th Cir. 2015). Porter's sworn declaration does not create a dispute of fact with regard to exhaustion because he does not aver that he filed a timely appeal to Level II after the Level I review determined his grievance was unfounded. His failure is significant at this juncture of the litigation because he has not denied the relevant and essential point upon which the defendants' motion for summary judgment is predicated. Indeed, his declaration in opposition to the motion for summary judgment does not address his failure to timely appeal the unfounded determination. Porter, as the nonmovant, cannot simply make a conclusory statement to demonstrate the existence of a disputed fact; instead, such a response results in the movant's asserted fact being admitted. See Integrated Direct Marketing, LLC v. May, 129 F. Supp. 3d 336, 345 (E.D. Va. 2015).

The PLRA requires "proper exhaustion," meaning Plaintiff had to "us[e] all steps that the agency holds out, and do[] so properly (so that the agency addresses the issues on the merits)." Ngo, 548 U.S. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). In so holding, the Supreme Court reasoned that "proper exhaustion" enhances "the quality of those prisoner suits that are eventually filed," for, "[w]hen a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved." Id. at 95. Thus, "proper exhaustion" requires "compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure

on the course of its proceedings." Id. at 90-91. These "critical procedural rules" specifically include grievance timing requirements, otherwise, "a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time," and, following rejection of the grievance as untimely, "proceed directly to federal court." Id. at 95. The PLRA was not intended to "create such a toothless scheme." Id. The PLRA's exhaustion-prior-to-filing requirement is "mandatory" and the language of the PLRA is "unambiguous." Ross, 136 S. Ct. at 1856. "An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." Id. (quoting Woodford, 548 U.S. at 85) (additional citations omitted)). Additionally, "a court may not excuse a failure to exhaust." Ross, 136 S. Ct. at 1856.

Exhaustion includes all levels of administrative review. The United States Supreme Court found an inmate had failed to properly exhaust his grievance because the inmate had failed to appeal the denial of his grievance to the intermediate or final appeal levels, Booth v. Churner, 532 U.S. 731, 735 (2001), and the inmate was deemed to have failed to exhaust his administrative remedies. Id.; see Pozo, 286 F.3d at 1025 ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require"); see, e.g., Jamison v. Clarke, No. 7:18-cv-00504, 2020 WL 5778791, at *6 (Sept. 28, 2020) (because inmate never appealed his grievance to Level II, "he failed to properly exhaust his remedies, consistent with OP 866.1" and he could not bring the unexhausted claims); Oliver v. Va. Dep't of Corrs., No. 3:09-cv-56, 2010 WL 1417833, at *6-7 (W.D. Va. Apr. 6, 2010) (holding that Plaintiff who failed to appeal grievance intake decision to VDOC Regional Ombudsman failed to exhaust remedies as required by the PLRA); see also Davis v. Stanford, 382 F. Supp. 2d 814, 818 (E.D. Va. 2004) (Virginia inmates are required to exhaust claims in accordance with the grievance procedures

established by the VDOC), aff'd, 127 F. App'x 680 (affirming "for the reasons stated by the district court"). Plaintiff's failure to follow the VDOC's policy regarding the submission of grievances on the claims raised in this case renders his claims against Defendants Sawyer, Penden, and Stephenson unexhausted, and the motion for summary judgment will be granted.

## IV. Conclusion

For the reasons outlined above, Defendants Sawyer, Penden, and Stephenson motion for summary judgment [Dkt. No. 51] must be granted. An appropriate Order and judgment shall issue.

Entered this 2 day of March 2022.

Alexandria, Virginia

/s/
Rossie D. Alston, Jr.
United States District Judge